**<u>NOT FOR PUBLICATION</u>**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

—————————————————————
:
FIRST PRIORITY EMERGENCY :
VEHICLES, INC., :
:
                Plaintiff, :
        v. :                                    Case No. 3:18-cv-9805-BRM-DEA
:
:
REV AMBULANCE GROUP ORLANDO, :
INC., d/b/a MCCOY MILLER :
EMERGENCY VEHICLES, MARQUE :
EMERGENCY VEHICLES, and ROAD :
RESCUE EMERGENCY VEHICLES, :
:                                               **OPINION**
                Defendant. :
—————————————————————:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendant REV Ambulance Group

Orlando, Inc. d/b/a McCoy Miller Emergency Vehicles, Marque Emergency Vehicles, and Road

Rescue Emergency Vehicles ("REV" or "Defendant") seeking to dismiss Plaintiff First Priority

Emergency Vehicles, Inc.'s ("First Priority" or "Plaintiff") Second Amended Complaint ("SAC")

pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 35.) First Priority filed an

Opposition to Defendants' Motion to Dismiss (ECF No. 38.) Having reviewed the submissions

filed in connection with the motion and having declined to hold oral argument pursuant to Federal

Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing,

Defendant's Motion to Dismiss is **GRANTED.**

I.   **BACKGROUND**[1]

    **A.  Factual Background**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to the plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

First Priority is a New Jersey corporation with its principal place of business in Manchester, New Jersey. (ECF No. 34 ¶ 6.) REV is a Florida corporation with its principal place of business in Florida. (*Id.* ¶ 7.) REV does business under a variety of names, including McCoy Miller Emergency Vehicles ("McCoy Miller"), Marque Emergency Vehicles ("Marque"), Road Rescue Emergency Vehicles ("Road Rescue"), and Wheeled Coach Vehicles ("Wheeled Coach"), among others. (*Id.*)

    **B.  Procedural History**

On May 29, 2018, First Priority filed a Complaint (the "Complaint") against REV asserting causes of action for violations of the NJFPA, breach of contract and of the implied covenant of good faith and fair dealing, and violations of state and federal antitrust law. (ECF No. 1.) On November 9, 2018, First Priority filed an Amended Complaint (the "Amended Complaint"). (ECF No. 17.) On July 30, 2019, this Court issued an opinion (the "July 30, 2019 Opinion") granting REV's Motion to Dismiss Counts One, Five, Six, Seven, Eight, Nine and Ten of the Amended

---

[1] The Court writes for the parties and assumes familiarity with the facts. For a detailed account of the relevant facts, refer to this Court's July 30, 2019 Opinion on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. (ECF No. 31.)

Complaint, denying REV's Motion to Dismiss Count Two of the Complaint, and granting First Priority's Cross-Motion for Leave to Amend the Amended Complaint. (ECF No. 31.)

On August 30, 2019, First Priority filed the SAC asserting breach of contract and the implied covenant of good faith and fair dealing (Count One), violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (Count Two), violations of Section 2 of the Sherman Act, 15 U.S.C. § 2 (Counts Three and Four), violation of the Clayton Act, 15 U.S.C. § 14 (Count Five), and violation of New Jersey Antitrust Laws (Count Six) . (ECF No. 34.) On September 13, 2019, REV filed a Motion to Dismiss all Antitrust Counts (Counts Two through Six) in the SAC. (ECF No. 35.) On October 9, 2019, First Priority filed an Opposition to the Motion to Dismiss. (ECF No. 38.) On October 14, 2019, REV filed a Reply Brief to First Priority's Opposition. (ECF No. 39.)

## II.    LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec.*

4

*Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220).

### III.   DECISION

REV contends each of First Priority's antitrust claims—Counts Two (15 U.S.C. § 1), Three (15 U.S.C. § 2- attempt to monopolize), Four (15 U.S.C. § 2- monopolization), Five (15 U.S.C. § 14), and Six (New Jersey State antitrust violations, N.J. Stat. Ann. § 56:9, *et seq.*)—because First Priority has  not met its burden of alleging a relevant market. (ECF No. 35-1 at 3-6.) First Priority argues the allegations in its SAC "adequately distinguish[] between the role of used verses new ambulances in the subject market, which provides legal basis for excluding old and new ambulances as interchangeable substitutes by consumers." (ECF No. 38 at 3.)

In antitrust actions, plaintiffs have the "burden of defining the relevant market." *Queen City Pizza v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) (citing *Tunis Bros. Co., Inc. v. Ford Motor Co.*, 952 F.2d 715, 726 (3d Cir. 1991)).[2] "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Id.* at 436 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 375 (1962)). Furthermore, the test for determining interchangeability of use is not "reasonably interchangeable by a particular plaintiff, but 'commodities reasonably interchangeable by consumers for the same purpose.'" *Id.* at 436 (quoting *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956)). The relevant market is legally insufficient,

---

[2] Importantly, the Third Circuit has also held that although defining a proper market can be a fact intensive inquiry requiring discovery, *see Eastman Kodak Co. v. Image Tech. Servs, Inc.*, 504 U.S. 451, 482 (1992), there is no "*per se* prohibition against dismissal of antitrust claims for failure to plead a relevant market under Fed. R. Civ. P. 12(b)(6)." *Queen City*, 124 F.3d at 436.

and thus dismissal is appropriate, when a plaintiff "fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor." *Id.* at 436 (citing *TV Commc'ns Network, Inc. v. Turner Network Television*, 964 F.2d 1022, 1025 (10th Cir. 1992)). The New Jersey Antitrust Act has incorporated the "reasonable interchangeability" standard applicable to federal antitrust claims by virtue of statute. *See* N.J. Stat. Ann. § 56:9-18 (stating that the New Jersey Antitrust Act "shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes and to effectuate, insofar as practicable, a uniformity in the laws of those states which enact it").

In the July 30, 2019 Opinion, this Court dismissed First Priority's antitrust claims because the relevant market in the Amended Complaint did "not encompass all reasonably interchangeable substitutes, nor [did] it adequately distinguish between the role of used verses new ambulances in the subject market." (ECF No. 31 at 20.) In the SAC, First Priority attempts to fix these deficiencies by offering the following:

> 78.    The ambulance market as alleged by Plaintiff herein is defined, in part, based on the concepts of reasonable interchangeability, substitutability and cross-elasticity of demand. Consumers of the ambulances I the ambulance market shop for only new ambulances, not old or used ambulances. In this regard, 85-90% of consumers of new ambulances fall into three general categories as set forth below. Customers in each of these customer classes do not view used or older ambulances to be reasonably interchangeable with new ambulances, which comprise the ambulance market alleged in this case.

> 79. Volunteer ambulance purchasers ("VAPs") are funded through donation and/or municipal contributions. These customers buy and consider buying only new ambulances, not used ambulances. VAPs will extend the time between purchase of new ambulances rather than purchase used ambulances. Also, VAPs buy new ambulances

in order to avoid accepting the liability associated with purchasing used ambulances without warranty or unknown vehicle maintenance or history.

80. Municipal ambulance purchasers ("MAPs") are funded thru [sic] municipal contributions and billing. MAPs include fire department EMSs and may include some County organizations. MAPs in the normal course purchase new ambulances, not old or used ones. MAPs will extend the time between purchases of new ambulances rather than purchase used ambulances. Also, MAPs buy new ambulances in order to avoid accepting the liability associated with purchasing used ambulances without warranty or unknown vehicle maintenance or history.

81. Hospital-based ambulance purchasers ("HAPs") are hospital funded purchasing entities. HAPs almost always (over 90% of the time) purchase only new, not used ambulances. In the small number of cases that HAPs might use older ambulances, this is usually upon their takeover of municipal/volunteer territory for use in that territory only. Further, frequently when bidding on contracts HAPs required to provide new or 'like new' vehicles as part of the contract.

82. In sum, VAPs, MAPs, and HAPs primarily buy new ambulance vehicles with a few exceptions. The separation is based in large measure on the lack of any warranty of a used vehicle, the unknown history of a used vehicle's use and the known fact that ambulance use of a vehicle is extremely rigorous and hard on the chassis systems (brakes, suspension, engine) that become a reputational and financial liability. In addition, most bids and contracts require the purchase of new ambulances.

83. Although not part of the ambulance market as defined in this case, there exist some consumers that do not usually buy new ambulances, but do buy older or used ambulances as the rule. These customers are ambulance entities that service contracts though nursing homes and care centers and bid on a lowest acceptable price basis. These customers do not compete with VAPs, MAPs and HAPs for the purchase of new ambulances; instead, they compete with other such entities that need to survive financially based on non-market based Medicare/Medicaid reimbursements.

(ECF No. 34 ¶¶ 78-83.)

REV contends the above allegations do not "create a plausible relevant market." (ECF No. 35-1 at 2-4.) In so arguing, REV notes the SAC—like the Amended Complaint—continues to limit

the relevant market to newly manufactured ambulances while continuing to admit the presence of used ambulances in the market "substantially impact[ed] the ability to sell new ambulances. (*Id.* at 4 (citing ECF No. 34 ¶¶ 73, 57).) As such, First Priority "cannot plausibly allege that its relevant market encompasses all interchangeable substitute products." (ECF No. 39 at 2.)

Indeed, the relevant market proposed in the SAC remains insufficient as a matter of law. As was the flaw with the relevant market in the Amended Complaint, the relevant market here does not encompass all reasonably interchangeable substitutes. While First Priority's new allegations (ECF No. 34 ¶¶ 78-83) distinguish between the role of new and used ambulances, these allegations are insufficient to demonstrate used ambulances are not reasonably interchangeable substitutes.

Further, in its Opposition, First Priority mischaracterized its own allegations. In responding to Rev's arguments, First Priority contends used ambulances should not be included in the proposed product market because there was a "very rare and unique occurrence of one period where a glut caused *some* intermarket impact." (ECF No. 38 at 9 (emphasis added).) However, by First Priority's own admission, they could not meet their contractual sales goals because the large number of used ambulances on the market *substantially impacted*" its ability to sell to ambulances. (ECF No. 34 ¶ 57 (emphasis added).)

Therefore, for the same reasons this Court set forth in its July 30, 2019 Opinion, First Priority's proposed relevant market fails as a matter of law. By not including used ambulances that "substantially impact[ed] the ability to sell new ambulances," the relevant market does not encompass all reasonably interchangeable substitutes. Accordingly, REV's Motion to Dismiss Counts Two, Three, Four, Five, and Six of the SAC is **GRANTED**.

**IV.**    **CONCLUSION**

For the reasons set forth above, REV's Motion to Dismiss is **GRANTED.**

**Date: April 28, 2020**                                              */s/ Brian R. Martinotti*
                                                                        **HON. BRIAN R. MARTINOTTI**
                                                                        **UNITED STATES DISTRICT JUDGE**